Cahuthees, J.,
delivered the opinion of the Court.
This [bill is filed for the purpose of rendering a tract of land ndter Sparta, the legal title to which is in defendant, G. Dibrell, and arrearages of salary due to [defendant, A. Dibrell, as Treasurer of the State, liable for judgments to the amount of near three thousand dollars, which the Bank of Tennessee has recovered in the Circuit Courts of Davidson and White counties. The decree was for the defendants, on all points in the Chancery Court. No question is made here, except as to the salary; for which, it is insisted, there should have been a decree for the plaintiff.
It is charged in the bill, that, as the Bank of Tennessee belongs to the State, all debts due to it *381 are debts to ■ the State, and, consequently, the relation of debtor and creditor exists between the State and defendant, A. Dibrell; and, for that reason, his salary should be appropriated to the satisfaction of the judgments against him in favor of the bank. In this view, the defendant Crozier is enjoined, as Comptroller, from issuing his warrant for the salary, as it may fall due. If it were true that the Bank of Tennessee and the treasury of Tennessee were idéntical there would be much plausibility, and perhaps more, in the ground taken by complainants. In that case, the act of 1835, ch. 27, § 6, (Car. & Nich., 691,) would authorize and require the retention of the sal-aryj and its application to the debt due to the State. But the assumption upon which the bill in that aspect is based, is unsound and fallacious. The fact that the bank is the creature and property of the State, does not make it identical with, or even an integral part of, the State sovereignty. It is . a distinct, fiscal corporation, enjoying a separate existence, with its own chartered rights, obligations, and powers. The doctrine that when a State becomes a common carrier, by means of railroads owned by itself, or otherwise, or banker, or in any other mode enters into the common avocations of citizens, or private companies, or corporations, that it throws off its sovereignty, has become too well established to allow of argument at this day. In such cases, the same rules of liability apply, and no superior advantages are enjoyed. Debts due to a State bank, are barred by the statutes of limitation, and liable to all the de-fences, as if it were a private corporation. So of *382 suits for property, real or personal. This would be otherwise with the State as a sovereign.
This case, then, presents the naked question, whether the salary of a public officer can be attached in the hands of the officers of the State who have control of the treasury, or any other officer, intrusted by the laws with the payment of demands against the treasury.
Every consideration of policy would forbid it. No government can sanction it. It would be very embarrassing generally, and, under some circumstances, might prove fatal to the public service, to allow the means of support of the servants of the government to be intercepted in the hands of the distributing agents. If the funds of the government, thus specifically appropriated for the support and maintenance of its agents, were allowed to be divested by process of attachment, in favor of creditors, or otherwise, from their legitimate object, the functions of the government might be suspended.
The State might be thus deprived of the services of her most valuable citizens. The same principle would allow the hard-earned pay of the officers in the army and navy, as well as that of the common soldier or seaman, or even the favored pensioner who happened to be poor and indebted, to be snatched from them in the hour of their greatest need. In this, as well as many other cases, the most strong and meritorious private rights must be made to yield to the public interest. It is a pervading principle in all governments, that where private and public inte *383 rest come in conflict, with proper exceptions, the latter must yield.
But, independent of this consideration, the relations of debtor and creditor, in the sense of the attachment and garnishee laws, does not exist between the State and its employees. The funds set apart for that purpose, belong to the State, and not to him who renders such service, until they pass out of the treasury and the hands of disbursing agents. We held, at the last term of this Court, that the pay of a pensioner could not be attached in the hands of a pension agent, nor in its transmission to him by a private person, acting under a power of attorney from him; and this upon the ground that the fund did not lose the protection of this principle until it reached the hands of the pensioner.
The principles adverted to are generally applicable to all persons holding, in any legal capacity, the funds of another’s debtor. Clerks of courts and sheriffs, 7 Humph., 132, pursers in the navy, as to the pay of seamen, 4 How.; U. S., 20; 2 Cranch., C. C., 344, municipal- corporations, as to the salaries of their officers, 11 Missouri, 59; 6 Vermont, 121; 12 Conn., 404, have been held to be included in this exemption from garnishment. For a much stronger reason, surely, would the officers and servants of a sovereign State, be saved from the efforts of creditors, to reach the moneys due to them for their services.—Drake on Attachment, 497.
The decree of the Chancellor will be affirmed.